# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

|  |  |
|---|---|
| KENNETH MASON, <br><br>         Plaintiff, <br><br> v. <br><br> CREDIT ONE BANK, N.A; and <br> EQUIFAX INFORMATION SERVICES, LLC, <br><br>         Defendant. | Case No.: 1:26-cv-00078 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Kenneth Mason ("Plaintiff" or "Mr. Mason"), by and through the undersigned counsel, brings this action on an individual basis, against Credit One Bank, N.A., ("Defendant Credit One" or "Credit One"), and Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.        The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster

1

and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant Equifax acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

2

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec.

36570 (1970)] (emphasis added).

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to

determine whether information disputed by consumers is inaccurate and record the current

status of the disputed information, or delete the disputed information, before the end of the

30-day period beginning on the date on which the CRA receives the notice of dispute from

the consumer. This mandate exists to ensure that consumer disputes are handled in a timely

manner and that inaccurate information contained within a consumer's credit report is

corrected and/or deleted so as to not prevent said consumer from benefiting from his or her

credit and obtaining new credit.

3

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11. Plaintiff's claims arise out of Defendant Equifax's blatantly inaccurate credit reporting, wherein Equifax reported to Plaintiff's potential creditors that Plaintiff had failed to make timely payment on his Credit One account.

12. Accordingly, Plaintiff brings claims against Defendant Equifax for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13. Plaintiff also brings a claim against Defendant Credit One for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Equifax, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

4

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

15.     Kenneth Mason ("Plaintiff" or "Mr. Mason") is a natural person residing in Randleman, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Equifax Information Services, LLC. ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of North Carolina, including within this District.

17.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Credit One Servicing, LLC, ("Credit One") is an account servicing company with its headquarters in Las Vegas, Nevada and is authorized to do business in the State of North Carolina, including within this District.

19.     Credit One is an account servicer and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

5

20.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**Summary of the Fair Credit Reporting Act**

22.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable

6

to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### Factual Background

27. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

28. Defendant Equifax sells millions of consumer reports (often called "credit reports" or "reports") per day and also sells credit scores.

29. Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant Equifax, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

7

30.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant Equifax, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

31.     Defendant Equifax's consumer reports generally contain the following information:

(a)     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

(b)     Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c)     Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

(d)     Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

32.     Defendant Equifax obtains consumer information from various sources. Some consumer information is sent directly to Defendant Equifax by furnishers.

8

33.    The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendant Equifax) to make lending decisions.

34.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant Equifax's consumer reports.

35.    The information Defendant Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

36.    FICO Scores are calculated using information contained in Defendant Equifax's consumer reports.

37.    Defendant Equifax knows that FICO and other third-party algorithms (as well as the algorithms owned by CRAs) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

38.    Defendant Equifax knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

39.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

40.    The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the

9

more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

41.     Defendant Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

42.     Defendant Equifax fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant Equifax for its inaccurate credit reporting.

44.     Thus, Defendant Equifax is on continued notice of its inadequate reporting procedures.  Specifically, Defendant Equifax is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

45.     Defendant Equifax has received and documented many disputes from consumers complaining that Equifax reported inaccurate information about them.

**Plaintiff's Credit  One Account**

46.     Sometime around March 13, 2025, Plaintiff applied for and received a credit card with Defendant Credit One.

47.     Plaintiff never used the card and decided he wanted to close it. Therefore, on or about March 25, 2025, Plaintiff requested that Defendant Credit One close the card.

48.     When Plaintiff reviewed his account in the Credit One portal to close it, he noticed that he had been charged an annual fee for the card.

49.     Plaintiff immediately contacted Defendant Credit One's customer service about the fee and the Credit One representative assured Plaintiff that the annual fee would be waived as Plaintiff never used the card, and that the account would be closed.

50.     Despite Defendant Credit One's representative assurance, Plaintiff Credit One account continued to show a payment due and a balance of $95.00 owed in Credit One's portal.

51.     Plaintiff made several calls to Defendant Credit One about the app identifying a payment due, Defendant Credit One continued to reassure Plaintiff that the matter would resolve itself in the next billing cycle (April 2025) and that the issue was from a delay in their system.

52.     However, despite the numerous reassurances with Defendant Credit One, the Credit One portal began showing Plaintiff's account as past due with a $30 late fee.

53.     Plaintiff was shocked and contacted Defendant Credit One *again*. Defendant Credit One continued to reassure him that it was a system error and that it would be corrected in the next billing cycle.

54.     Plaintiff called and spoke to multiple Credit One representatives including Christina, Denny, and Barney, escalating the issue each time. And each time the

representative continued to assure Plaintiff the issue was just a system error that would resolve itself.

55.    On May 27, 2025, riddled with anxiety and frustration concerning Defendant Credit One's inaccurate reporting, Plaintiff filed a formal complaint with the Office of the Comptroller of the Currency ("OCC") against Defendant Credit One.

56.    Plaintiff's case was escalated to the Office of the President at Credit One, where he spoke with an agent, Alexis.

57.    Alexis confirmed the account was closed and no transactions had occurred but explained that system delays were preventing the correct information from being processed.

58.    Alexis reassured Plaintiff that the issue would be addressed and promised an update within 24 hours.

59.    Unfortunately, Credit One's system glitches seemed to persist, delaying the necessary adjustments, including the removal of the past due status from Plaintiff's credit reports.

60.    The situation remained unresolved, despite multiple follow-ups and reassurances.

61.    On May 27, 2025, Plaintiff received a letter from the Office of the Comptroller of the Currency confirming they reviewed the information that was provided and contacted the financial institution requesting a response from them.

62.    On June 3, 2025, in response to Plaintiff's OCC complaint, Defendant Credit One sent a letter to Plaintiff confirming that his account was closed on March 25, 2025,

and since it was not used, his balance was $0. Credit One also stated it had requested the removal of this tradeline from Plaintiff's credit reports. A true and accurate copy of the letter from Credit One is included below.

**CreditOne**
B A N K
Office of the President

PLX9UP00101531 - 995778
‖·‖‖‖·‖‖‖‖‖ᵤₗₗᵣₗₑₗᵣₗᵖ‖‖ₗᵨᵤₑᵣₗᵨₗₗ‖‖‖ₑₘₗₗ‖ᵨₗₗₕₗₗᵨₗₗₕ
KENNETH MASON

RANDLEMAN, NC 27317-8159

06/03/2025

RE: Account Number Ending in 1420
Case Number 20250528010

Dear Kenneth Mason,

Credit One Bank received your communication on May 27, 2025, forwarded from the Office of the Comptroller of the Currency.

Per your request, we closed your account on March 25, 2025. Since the credit card was not used for purchases, all fees billed have been credited, bringing the balance to zero.

We have requested the removal of the Credit One Bank tradeline from your credit history. Please allow the consumer reporting agencies 60 days to update their records. If you need to provide evidence of the requested change prior to the agencies' ability to update their records, please provide a copy of this letter.

We have made the request to the following consumer reporting agencies:

Experian: 888-397-3742
TransUnion: 800-888-4213
Equifax: 800-685-1111 or 888-766-0008

We apologize for any inconvenience this may have caused.

13

**The Consumer Reporting Agencies Report that Plaintiff Has a Balance and a Late Remark Associated with his Credit One Account**

63.     Sometime after having the phone calls with Defendant Credit One, Plaintiff was concerned and decided to obtain copies of his credit files from Defendant Equifax and non-parties Trans Union and Experian.

64.     Plaintiff reviewed the pertinent details in his credit reports and learned that his account was reported as having an outstanding balance and as 30 days late in April 2025.

65.     Specifically, his Credit One account with account number ending 1420 was reported with a balance of $168.00 owed and 30 days late in April 2025.

66.     Plaintiff was confused and distressed by this information because he had been reassured on numerous occasions that he would not be charged and that the account would not report as delinquent.

67.     Plaintiff did not owe $168.00 and that balance amount should not have been reported.

68.     Plaintiff was not delinquent on any payments and that remark should not have been reported.

**Plaintiff's Second Disputes Regarding the Inaccurate Credit Reporting June 2025**

69.     On or about June 6, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's and non-parties Trans Union and Experian's inaccurate reporting, Plaintiff disputed the inaccurate information that Plaintiff had an outstanding balance and the 30 days late remark associated with the account serviced by Defendant Credit One with non-parties Trans Union and Experian, and Defendant Equifax.

14

70.     Plaintiff explained that his account had been closed, he did not owe a balance and was not late on any payments, and any reporting suggesting he was late on payments and owed a balance on the account was inaccurate.

71.     Plaintiff also attached the letter from Credit One included in paragraph 62 of this Complaint, which stated Credit One had requested deletion of the account from all three credit reporting agencies.

72.     Plaintiff requested that Defendant Equifax and non-parties Trans Union and Experian reinvestigate the disputed information, correct the reporting, and for each to send him a corrected copy of his credit report.

73.     Shortly thereafter, non-parties Trans Union and Experian responded to Plaintiff's dispute by deleting the account.

**Defendant Equifax's Unreasonable Dispute Reinvestigation**

74.     Upon information and belief, Equifax sent Defendant Credit One an automated credit dispute verification ("ACDV") pursuant to Plaintiff's June 6, 2025 dispute to Equifax.

75.     On or about June 26, 2025, Defendant Equifax verified to Plaintiff that the disputed balance amount, a $30.00 past due, and the 30 days late remark were accurate.

76.     Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

77.     Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's June 6, 2025, dispute, including the letter from Credit One stating the account should be deleted.

15

78.     Thereafter, Defendant Equifax failed to correct or delete the balance amount and late remark in relation to the account reported in Plaintiff's credit file and reports.

79.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on June 6, 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant's Method for Considering Consumer Credit Report Disputes**

80.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

81.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

82.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

83.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

84.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear

on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

85.     Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

86.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

87.     These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

88.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

89.     The data furnishers, like Defendant Credit One, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

90.     Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Credit One's Unreasonable Dispute Reinvestigation**

91. Upon information and belief, on or about June 26, 2025, Defendant Credit One received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

92. Upon information and belief, Defendant Credit One failed to review all relevant information provided by Defendant Equifax (including Credit One's very own letter stating the account should be deleted) regarding Plaintiff's dispute tendered on or about June 6, 2025.

93. Upon information and belief, Defendant Credit One verified the disputed information as accurate to Defendant Equifax on or about June 6, 2025.

94. Upon information and belief, non-parties Trans Union and Experian deleted the account of their own volition based on Plaintiff's dispute, not because of a request by Defendant Credit One.

95. Defendant Credit One violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff Third Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting July 2025**

96.    As of July 2025, Defendant Equifax was reporting the balance owed as $0 but was now reporting Plaintiff's account as **60 days late in June 2025**.



97.    On July 4, 2024, in addition to his OCC complaint and letter to Equifax, Plaintiff also filed a Consumer Financial Protection Bureau ("CFPB") complaint against Defendant Equifax.

98.     Plaintiff explained that any notation on his account that he was 60 days late in June 2025 was inaccurate.

99.     Plaintiff *again* attached the June 3, 2025 letter from Credit One included in paragraph 62 of this Complaint, which stated Credit One had requested deletion of the account from all three credit reporting agencies.

## Defendant Equifax's Unreasonable Reinvestigation

100.     Upon information and belief, Defendant Equifax sent Defendant Credit One an ACDV pursuant to Plaintiff's July 2025 dispute to Defendant Equifax.

101.     On August 25, 2026, Equifax responded to the CFPB.

Thank you for submitting your complaint through the CFPB Complaint Portal. In your complaint, you indicated that there were inaccurate items reporting on your credit file. Equifax has completed its investigation, including contacting the furnisher of the information, where applicable. A summary of the results are listed below: Trade: CREDIT ONE BANK THIS CREDITOR IS CURRENTLY REPORTING A ZERO BALANCE FOR THIS ACCOUNT. THIS ACCOUNT HAS BEEN UPDATED TO REPORT AS CLOSED. THE PAST DUE AMOUNT HAS BEEN UPDATED AS ZERO THE FOLLOWING FIELDS HAVE BEEN MODIFIED: PAST DUE,CHARGE OFF AMOUNT,SCHEDULED PAYMENT,DATE OF MAJOR 1ST DELIQUENCY REPORTED,CLOSED DATE,ADDITIONAL INFORMATION We hope this resolves your concerns and, if applicable, a copy of the dispute results has been mailed to you. If you have any additional questions, you may call 1-888-EQUIFAX (888-378-4329) or you may visit www.myequifax.com. With myEquifax, you can create an account to manage your security freeze, add or remove fraud alerts, and initiate credit file disputes. Additionally you can access free Equifax credit reports and other products. You may also obtain a free copy of your credit report on annualcreditreport.com.

102.   However, Equifax did not remove the late payment notation or delete the account as Credit One had indicated it would do in its June 3, 2025 letter attached to the complaint.

103.   When the CFPB asked for "feedback, Plaintiff responded that his issues were not addressed and that "The account is still showing that it was closed being 60 days past due. Credit One Bank was supposed to have this account deleted from my report all together."

104.   Plaintiff never heard back from the CFPB.

105.   Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

106.   Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's July 2025 dispute.

107.   Thereafter, Defendant Equifax failed to correct or delete the late remark associated with Plaintiff's account appearing in Plaintiff's credit file.

108.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered in or around July 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Credit One's Unreasonable Dispute Reinvestigation**

109.   Upon information and belief, in or around July 2025, Defendant Credit One received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

110.   Upon information and belief, Defendant Credit One failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or around July 2025.

111.   Upon information and belief, in or around July 2025, Defendant Credit One verified the disputed "late" information as accurate to Defendant Equifax (again).

112.   Defendant Credit One violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff's Fourth Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting August 2025**

113.   As of August 2025, Defendant Equifax was now reporting **that Plaintiff was now 30 days late in June 2025** (not the 60 days that had been reported in the July 2025 report).

114.   On or about August 13, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff once again disputed the 30 days late in June 2025 remark.

115.   Plaintiff explained that any notation that he was 30 days late in June 2025 associated with his account was inaccurate.

22

116. Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and for Equifax to send him a corrected copy of his credit report.

**Defendant Equifax's Unreasonable Reinvestigation**

117. Upon information and belief, Defendant Equifax sent Defendant Credit One an ACDV pursuant to Plaintiff's August 2025 dispute to Defendant Equifax.

118. On August 23, Plaintiff received a dispute response letter from Equifax stating "THE DISPUTED ITEM IS NOT CURRENTLY REPORTING ON THE EQUIFAX CREDIT FILE. Company Name: CREDIT ONE BANK Account Number: 1420."

119. However, that was false. On August 29, 2025, Plaintiff obtained his Equifax report and the account was reported as **60 days late in May 2025**.

23





120. Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's disputes.

121. Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's August 2025 dispute.

122. Defendant Equifax also falsely told Plaintiff the Credit One account was not being reported when it was in fact negatively reported.

24

123. Thereafter, Defendant Equifax failed to correct or delete the late remark associated with Plaintiff's account appearing in Plaintiff's credit file.

124. Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's August 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Credit One's Unreasonable Dispute Reinvestigation**

125. Upon information and belief, in or around August 2025, Defendant Credit One received at least one ACDV from Defendant Equifax and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

126. Upon information and belief, Defendant Credit One failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's disputes tendered in or around August 2025.

127. Upon information and belief, on at least one occasion in or around August 2025, Defendant Credit One verified the disputed information as accurate to Defendant Equifax.

128. Defendant Credit One violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

25

**Plaintiff's Fifth Dispute to Defendant Equifax Regarding the Inaccurate Credit Reporting November 2025**

129.    As of November 2025, Defendant Equifax reported that Plaintiff was **30 days late in April 2025**.

130.    On or about November 5, 2024, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff disputed via certified letter the 30 days late in April 2025 remark on the account.

131.    Plaintiff explained that any notation that he was 30 days late in May 2025 associated with his account was inaccurate.

132.    Plaintiff *again* referenced and attached the June 3, 2025 letter from Credit One included in paragraph 62 of this Complaint, which stated Credit One had requested deletion of the account from all three credit reporting agencies.

133.    Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and for Equifax to send him a corrected copy of his credit report.

**Defendant Equifax's Unreasonable Reinvestigation**

134.    Upon information and belief, Defendant Equifax sent Defendant Credit One an ACDV pursuant to Plaintiff's November 2025 dispute to Defendant Equifax.

135.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

136.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's November 2025 dispute.

137.    On November 24, 2025, Defendant Equifax responded to Plaintiff's dispute (as shown below). Equifax stated that Credit One had "verified" the payment history was accurate and Equifax continued to inaccurately report the account as "30-59 Days Past Due" in April 2025 (the "Date of first delinquency").

**The Results Of Our Reinvestigation**

**Credit Account Information**
(For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by   credit grantors)

| Account History Status Code Descriptions | 1 : 30-59 Days Past Due<br>2 : 60-89 Days Past Due<br>3 : 90-119 Days Past Due<br>4 : 120-149 Days Past Due | 5 : 150-179 Days Past Due<br>6 : 180 or More Days Past Due<br>G : Collection Account<br>H : Foreclosure | J : Voluntary Surrender<br>K : Repossession<br>L : Charge Off |

>>>  The information you disputed has been updated as well as other information on this item. Account # - *1420 The results are:   ADDITIONAL INFORMATION HAS BEEN PROVIDED FROM THE ORIGINAL SOURCE REGARDING THIS ITEM. THIS CREDITOR HAS VERIFIED TO OUR

COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY. THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE PRIOR PAYING HISTORY IS BEING REPORTED CORRECTLY. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *ADDITIONAL INFORMATION.  If you have additional questions about this item please contact:  *CREDIT ONE BANK, PO Box 98873, Las Vegas, NV 89193-8873 Phone: (877) 825-3242*

**CREDIT ONE BANK**    PO Box 98873 Las Vegas NV 89193-8873 : 8778253242

| Account Number<br>*1420 | Date Opened<br>03/13/2025 | High Credit<br>$168 | Credit Limit<br>$1,000 | Terms Duration | Terms Frequency<br>Monthly | Months Revd<br>2 | Activity Designator<br>Paid and Closed | Creditor Classification |

| Date of Last<br>Reported Update<br>11/24/2025 | Balance<br>Amount<br>$0 | Amount<br>Past Due | Date of Last<br>Payment | Actual Payment<br>Amount<br>$0 | Scheduled Payment<br>Amount | Date of 1st<br>Delinquency<br>04/01/2025 | Date of Last<br>Activity | Date Maj Del<br>1st Rptd | Charge Off<br>Amount | Deferred Pay<br>Start Date | Balloon Pay<br>Amount | Balloon Pay<br>Date | Date<br>Closed |

| Status<br>Account closed; was 30 - Revolving<br>59 Days Past Due | | Type of Account | | Type of Loan<br>Credit Card | | Whose Account<br>Individual Account | | | Portfolio Indicator | | Portfolio Status | | |

ADDITIONAL INFORMATION:
Account Closed At Consumers Request

Closed or Paid Account/Zero Balance

Credit Card

Account History with Status Codes

| 05/2025 | 04/2025 |
| 1 | 0 |

**Historical Account Information**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|
| 10/25 | No Data Available | | | | | | | | |
| 09/25 | No Data Available | | | | | | | | |
| 08/25 | No Data Available | | | | | | | | |
| 07/25 | No Data Available | | | | | | | | |
| 06/25 | No Data Available | | | | | | | | |
| 05/25 | No Data Available | | | | | | | | |
| 04/25 | $126 | $30 | | | $126 | $1,000 | | Credit Card | Closed |
| 03/25 | $95 | $30 | | | $95 | $1,000 | | Credit Card | |

(End of Report)
000003638-DISC

Page 4 of 6

5323605913-GZU-0ffe016b0000021a-11242025

27

138.   Thereafter, Defendant Equifax failed to correct or delete the late remark associated with Plaintiff's account appearing in Plaintiff's credit file.

139.   Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's November 2025 dispute (and his previous four disputes), or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Defendant Credit One's Unreasonable Dispute Reinvestigation**

140.   Upon information and belief, in or around November 2025, Defendant Credit One received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

141.   Upon information and belief, Defendant Credit One failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's November 5, 2025 dispute, including the attached letter from Credit One itself stating the account should be deleted.

142.   Upon information and belief, in response to Equifax's ACDV, Defendant Credit One verified the disputed information as accurate to Defendant Equifax.

143.   Defendant Credit One violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

144.   Plaintiff reasonably believes that Defendant Credit One continued to furnish data to Defendant Equifax inaccurately suggesting that Plaintiff was late on a payment

28

obligation he **never** owed Defendant Credit One at some point between April through and/or June.

145. Plaintiff reasonably believes that Defendant Equifax continued to publish that Plaintiff was late on a payment obligation he never owed to Defendant Credit One April through and/or June.

146. As a result of the inaccurate reporting of the balance amount and/or late payment remark, and despite Plaintiff's prior action to correct the error with Defendant Credit One, the Defendants made it practically impossible for Plaintiff to continue to obtain credit.

147. A single 30-day late payment can substantially impact credit scores, by as much as 60 to 110 points, especially when there are no other negative accounts, such as was the case with Plaintiff's Equifax report. A 60-day can impact scores even more.

148. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

149. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

150. As a standard practice, Defendant Equifax does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See*

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

151. Defendant Equifax is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant Equifax's violations of the FCRA are willful.

152. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by credit denials; loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

153. Between July and October 2025, Plaintiff was subject to multiple credit denials, including a rejection from Federal Credit Union on July 19, 2025, and subsequent denials from Truist Bank on July 22 and October 2, 2025.

154.   The impact of the inaccuracies by Defendants culminated on December 8, 2025, during a vehicle financing application with Trulliant Credit Union. Despite a successful prior borrowing history with the institution, Plaintiff was denied the 90-day payment deferment option because his credit score failed to meet the minimum requirements due to the Equifax error. Furthermore, Plaintiff was denied an 84-month loan term, forced instead into a shorter 75-month term with a significantly higher interest rate of 10.04%.

155.   On December 18, 2025, Plaintiff obtained another copy of his Equifax report and now the account is inaccurately reported as **30 days late in May 2025**. Equifax is also still reporting in the monthly payment history that Plaintiff had payments due and did not pay them.





### CREDIT ONE BANK - Closed

PO Box 98873, Las Vegas, NV 89193-8873 | (877) 825-3242
Account Number: *1420 | Owner: **Individual Account**
Loan/Account Type: **Credit Card** | Status: **Account closed; was 30 - 59 Days Past Due**

Date Reported: **11/24/2025** | Balance: **$0**
Credit Limit: **$1,000** | High Credit: **$168**

| | |
|---|---|
| Date Opened: **03/13/2025** | Date of 1st Delinquency: **04/01/2025** |
| Date of Last Activity: ■ | Date Major Delinquency 1st Reported: ■ |
| Scheduled Payment Amount: ■ | Amount Past Due: ■ |
| Actual Payment Amount: **$0** | Charge Off Amount: ■ |
| Date of Last Payment: ■ | Date Closed: ■ |
| Term Duration: ■ | Activity Designator: **Paid and Closed** |

Terms Frequency: **Monthly**
Months Reviewed: **2**
Deferred Payment Start Date: ■
Balloon Payment Amount: ■
Balloon Payment Date: ■
Narrative Code(s): **168, 158, 002**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | ■ | ■ | ■ | ✓ | 30 | ■ | ■ | ■ | ■ | ■ | ■ | ■ |

| | | | |
|---|---|---|---|
| ✓ Paid on Time | 30 30 Days Past Due | 60 60 Days Past Due | 90 90 Days Past Due | 120 120 Days Past Due |
| 150 150 Days Past Due | 180 180 Days Past Due | V Voluntary Surrender | F Foreclosure | C Collection Account |
| CO Charge Off | B Included in Bankruptcy | R Repossession | TN Too New to Rate | ■ No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 04/25 | $126 | $30 | ■ | ■ | ■ | $126 | $1,000 | ■ |
| 03/25 | $95 | $30 | ■ | ■ | ■ | $95 | $1,000 | ■ |

| Narrative Code | Narrative Code Description |
|---|---|
| 002 | Credit Card |
| 158 | Closed or Paid Account/Zero Balance |
| 168 | Account Closed At Consumers Request |

156.   The inaccuracies reported by Defendants has been an extreme burden to Plaintiff. Plaintiff currently has a job offer but is afraid to accept it because of the inaccurate report, given the employer is likely to pull his credit report.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant Equifax)

157.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

158. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

159. On numerous occasions, Defendant Equifax prepared patently false consumer reports concerning Plaintiff.

160. Defendant Equifax readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

161. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

162. As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by credit denials, loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

163. Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be

determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

164.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Equifax)**

165.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

166.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

167.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

168.    On at least FIVE occasions during the past two years, Plaintiff disputed the inaccurate information with Equifax and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the continued late payment reporting by Equifax.

169.   In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

170.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

171.   As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by credit denials loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

172.   Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

173. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(Only Claim for Relief Against Defendant Credit One)**

174. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

175. Defendant Credit One furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

176. Defendant Credit One violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's disputes (at least five), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

177. As a result of Defendant Credit One's conduct, action, and inaction, Plaintiff suffered damage by credit denials; loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of

36

labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

178.   Defendant Credit One's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

179.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Credit One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

1.   **WHEREFORE,** Plaintiff prays for the following relief:

i.   Determining that Defendants negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

37

Respectfully submitted this 21st day of January 2026.

CONSUMER JUSTICE LAW FIRM PLC

By: */s/ Dawn McCraw*
Dawn McCraw
North Carolina Bar No. 54714
Consumer Justice Law Firm PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: 602.807.1527
F: (480) 613-7733
E: dmccraw@consumerjustice.com

*Attorneys for Plaintiff*
*Kenneth Mason*